**Edna B. TAYLOR, Administratrix of the Estate of Otto S. Taylor, Deceased, Appellant,**

v.

**AMERICAN COMMERCIAL BARGE LINE COMPANY, Appellee.**

**No. 14571.**

United States Court of Appeals Third Circuit.

Argued Feb. 6, 1964.

Decided Feb. 20, 1964.

As Amended March 17, 1964.

Harry Alan Sherman, Pittsburgh, Pa., for appellant.

Wallace E. Edgecombe, Pittsburgh, Pa. (Royston, Robb, Leonard, Edgecombe & Miller, Pittsburgh, Pa., on the brief), for appellee.

Before McLAUGHLIN, GANEY and SMITH, Circuit Judges.

PER CURIAM.

Appellant's decedent, a riverman of thirty years experience, was a seaman of appellee's M/V Jefferson on September 3, 1961. That day while working aboard the vessel he was caused to be thrown or fell to the steel deck of a barge in the tow of the Jefferson. He felt pain in his shoulders and arms. On September 10, 1961, he was released from duty for medical care. He was given hospital treatment at St. Francis Hospital, Pittsburgh, Pennsylvania, and, at U. S. Public Health Service Hospital, Baltimore, Maryland, the rotator cuff in his left shoulder was surgically removed. Following that, he was treated intermittently at the Baltimore Hospital. He was paid maintenance and cure from September 11, 1961 through August 7, 1962. He filed his complaint in this cause on August 9, 1962 and at that time payments to him for maintenance and cure were stopped by the defendant. The latter contends it terminated payments "for the reason that the medical information received by defendant indicated that plaintiff had achieved maximum recovery."

Mr. Taylor sued under the Jones Act and in admiralty for personal injuries and damages arising from his accident, and for maintenance and cure. On September 24, 1962, the district court severed the maintenance and cure cause of action, advanced it and assigned it to the nonjury trial list of cases. It came on to be heard on April 5, 1963, at which time testimony was taken. The defense position, as now, was that the medical information received by it indicated that appellant had achieved maximum recovery and that, as stated in appellee's brief, " * * * plaintiff, although requested by defendant to furnish to defendant medical information justifying resumption of maintenance payments, failed to do so."

Mr. Taylor's physician, Dr. DeRoy, testified at the hearing that he examined Mr. Taylor on August 30, 1962. His judgment at the time was that Mr. Taylor " * * * was unable to do any type of work in the competitive labor field due to the pain and restriction of motion in the left shoulder." Asked whether there was anything that he could do to either relieve the pain or to improve the condition, he said, "Yes. I *felt* that rehabilitation in this case could probably be accomplished to a considerable extent by manipulation of his shoulder under anesthetic to overcome or break up the adhesions which had formed after the operation" (Emphasis added). Dr. DeRoy's written report of the examination, copy of which appellee received, read, "Some improvement in the use of the left shoulder might be accomplished by moving the joint through a range of motion with the patient under general anesthesia." The procedure suggested by Dr. DeRoy seems quite different from the Baltimore Hospital doctors' comment as related by appellant. "They said the only thing they could do would be to operate on my left arm again and operate on my right arm, and they thought it

would do some good." Mr. Taylor was fearful of this because as he said he had told the doctors "* * * if you operate, I might not be able to even move it at all."

Appellee's complete position is that no medical information which would justify resumption of maintenance and cure payment "was supplied by plaintiff until the hearing on May 1, 1963 * * *." Actually, the defense took Mr. Taylor's deposition on October 15, 1962, within two months of stopping the maintenance and cure payments. In his deposition Mr. Taylor gave a full account of his fall, of his operation and later treatments in Baltimore. He explained that since that time he had been exercising at home. Then he gave the following testimony:

"Q. What is the last doctor you saw about your arms?

"A. Well, Dr. DeRoy here is a mighty good doctor, he operated on my back here in 1954, and I went to him two or three weeks ago. And he said I ought to have more done for my arm and to help it out.

"Q. What did he mean?

"A. Well, treatments, and maybe an operation.

"Q. What kind of treatments?

"A. Well, heat treatments and exercise.

"Q. But did he treat you like that? Did he give you heat treatments?

"A. No, not yet.

"Q. Are you going to see him for heat treatments?

"A. I will if somebody pays the bill.

"Q. I see.

"A. I can't. I'll go for an operation with him, if he thinks it needs one.

"Q. If DeRoy thinks you need one?

"A. Yes."

There is no indication in the transcript of hearing that the above evidence was ever called to the attention of the court.

The court found as to plaintiff that "* * * in the course of his duties he sustained injuries to left arm and shoulders; and that he received maintenance and cure up to but not since August 7, 1962, but has not reached maximum cure * * *." The court ordered the defendant to "* * * make payments for maintenance and cure at the rate of $8.00 per day beginning May 1, 1963, and continuing * * *." Plaintiff's appeal is from the failure to allow maintenance and cure from August 7, 1962 to May 1, 1963.

The factual situation disclosed by the record makes it impossible to decide this appeal fairly with respect to the parties and to the trial judge, without findings of fact and conclusions of law on the only point at issue i. e. whether appellant is entitled to maintenance and cure from the defendant for the period from August 7, 1962 to May 1, 1963. The judgment of the district court is therefore vacated and the cause remanded for such findings and conclusions.